Haynes, J. \
This case came into this court on a petition in error to reverse a judgment that was recovered in favor of Corcoran against the Railway Company on the ground, first, that the verdict is not sustained by sufficient evidence; and, second, that the court erred in failing to give certain charges.
The general facts of the case are these: That Corcoran, who was about eighteen years of age, belonged to a gang, as they call it, of men who were engaged in unloading cars at' the depot of the Lake Shore R.R. in this city. At the time in question they were about unloading from a freight car, certain grindstones. There were among the grindstones some ■small ones and some very heavy ones, one weighing about 1400 pounds, lying near the door of the car. There were two cars, as I understand, that had stones in them, and the door of the car in question was open, and the men had ■gathered around it for the purpose of- taking out these stones. Before proceeding to work with the gang, which consisted of some four or five men, who were in charge of a foreman, the foreman directed Corcoran to go and get some bills of lading. He performed that duty, and then it seems the foreman directed him to go and get a truck, which he did. Of the men that were with the foreman, or under him, and around him, some were working in other cars, and some were engaged in taking off these small stones, and one or two of them were standing about the large stone, which they were about to remove. The manner of doing the work would be *379 to raise the stone up on edge in some form, . and then take the truck, which was the ordinary long, large truck used by the men, each man having a truck of his own, and raise the stone up and put the lower end of the iron, or rear end, I should call it, under the stone, and tip the stone over onto the truck, then let the truck down and remove the stone. Corcoran was sent for the other truck for the reason that they didn’t want to use any of the trucks that were being used by. the men permanently; but they wanted to get a truck that they could use to place the stone upon and allow it to remain over night. There was an extra truck which could be used for that purpose, and Corcoran was sent for it. As soon as that came the foreman laid aside this truck, took the one Corcoran had bróugnt, and started for the stone, and proceeded fo lay the stone on to the truck. There were four men at work on the stone, and a man who was taking off the stone, that were immediately about this place. Other men were working around there with other gangs. In removing this large stone, I think the testimony will show that customarily they would place the edge of the truck under the stone and lower the truck, and thereby bring the stone over on to the truck and let it down, and take a strong stick and thrust it through the hole in the center of the grindstone, resting it upon the slats of the truck underneath, That was done for the purpose, as the stone came over towards the truck, of preventing the stone from sliding back off the iron rim or edge of the truck; the stone as it went down, pressing against the back end of the truck, throwing the truck out against the men in front of it, and allowing the stone to fall vertically on the floor. Of course,a stone of the size of this one — 1400 pounds — -would be a pretty large weight upon that stick. In this particular ease, the moment that the foreman had got the edge of the truck in der it, and they were about to turn the stone down, a stick was thrust through the center hole of the stone and rested upon the *380 truck. As the-stone came over, the stick broke, and the truck shot forward. At or about the time the truck was put under, these four men, including Corcoran, took hold to let the stone down — -steady it down, and hold it, and handle it in placing it on the truck. As the stone fell and the truck shot out, the truck went to the end of the car, and the stone itself fell, catching the leg of Mr. Corcoran, breaking it so that the bones produced through the flesh.
The controversy in the case arises in one or two aspects, and one of them is, as to the knowledge that -Corcoran had hold of the stick that was being used; secondly, as to whether the foreman knew of the character of the stick, and saw it, or directed it to be used. Incidentally the question is raised as to the duty of the foreman in regard to using a stick. It is claimed, with more or less force, that it is customary often to place that kind of a stone on a truck without having a stick in it. The testimony of these parties, who were actively at work in unloading stone — loading them, lifting them, each one seeming to be doing something, and each seemed to be active — is, of course, and necessarily so, somewhat different. Each one gives his view of it as he saw it. There is a considerable contrariety in the testimony, but I am inclined to think that the general current of it is that while Corcoran was absent, one of the men obtained the stick that was used and brought it to the stone, and that when Corcoran returned it was there, and there was some conversation passed, as was testified to by one or two men, between the foreman and the man who had got the stick, about its quality or its strength, which Corcoran testifies he heard; but it would seem, as was suggested by counsel for the Railway Company, that he probably got that at second hand. I am inclined to think myself that he returned to the stone about the time it was placed on the truck. He brought the truck to the stone, and stepped around to his place, took hold with the other men, and at the same time the stick was thrust in and the *381 stone commenced to be moved down. All that occurred about as fast as it could consecutively in the ordinary method of doing business. I am of the opinion that Corcoran was not present when the early part of the coversation occurred. I think that at the time the stick was thrust in, he was, as was shown by some of the witnesses, bending over or holding the stone, or performing his part of the duty, which would be taking hold of the stone, and either lifting or steadying it, and endeavoring to hold it in its proper position on the truck, and to keep it there, as the truck descended. I think the testimony also shows that the foreman saw the stick and knew that the stick was to be put in; and it is quite possible that some words passed between him and a man by the name of Westerman, y/ho picked up the stick, as to the quality of the stick. I think there can be no real dispute but that he knew a stick was being used, and the kind of stick that was being used, and the manner in which it was being used, although it is possible there is some mistake about the conversation between him and Westerman, or between him and Foster; in regard to the stick, With that state of facts, we are of the opinion that the jury were authorized to find a verdict against-the defendant, the plaintiff in error here; or at least, that under that state of facts, that any verdict that they might return against the company, holding the company liable, ought not to be set aside by this court.
We differ somewhat from the views laid down by counsel in regard to the responsibility of the foreman in the matter. We understand the rule to be, that where the foreman is placed over a body of men, call them a gang, or a greater or less number, and he controls them and directs them in their business — 'they are bound to obey his orders and do his bidding in the performance of their duties, be represents the company, and that the duty would rest upon him as it would rest upon the company itself, if it could be present, to see, or to use all ordinary means to see, that the men are *382 protected in the performance of their work, so that they may not be injured while obeying the orders of their principal. We think it was clearly the duty of this foreman to* see that the utensils that he was using were at least ordinarily fit for the purpose for which they were used. He knew the’ weight of the stone. In fact, the testimony shows that the stick broke the moment it felt the force and power of the-stone; and it was essential that there should be a stick used of sufficient strength to hold the stone in place on the truck. The stick that was used was clearly insufficient, and broke’ when the weight of the stone came upon it. It was a stick that had been picked up and used in the car for the purpose-of holding the stone in place in the car, about 2x4, or something of that kind — a pine stick — and broke across the grain. The testimony shows that the foreman said something about the stick, and he said that he hadn’t much knowledge about the character of woods; but clearly we think it was his duty not only to use a stick, but to know, or to use all fair means’ of knowing that the stick was sufficient for the purpose; he should have examined it, should have seen it, and should’ have had a knowledge of the strength of a stick of that kind. ■ It is true that no stick was specially furnished for that purpose. They had a good many sticks used as rollers, pretty good sized pieces of wood, very strong and stout, and they often used those. So that we think the jury might-fairly find that this foreman was guilty of failing in his duty toward this man in not protecting him in loading that stone. In regard to contributory negligence on the part of the man himself, I think the testimony pretty fairly shows that he-came to the stone when this stick was in use; that he was-not paying any attention especially to the stick, and that he-was engaged in letting the stone down, and was in a position where his mind would be occupied with the business that he was bent upon, rather than with the stick that was being-thrust through ¿t that place. It seems to me that the jury *383 might fairly find that he was not guilty of contributory negligence.
The court was requeted to give to the juiy quite a number of requests which it did give, and rejected two or three, on behalf of the defendant. We have read the charge as given and the requests that were given, and also the requests that' were not given, and we are of the opinion that the jury was charged quite as favorably for the defendant as it ought to ask, in regard to the method and manner in which these-sticks were obtained and used, and the custom in regard to’ their use, <fcc, The court was requested to charge the jury—
4. “The jury should not render a verdict for the plaintiff' in this case because of any injury resulting from the breaking of the stick in question, unless the jury finds from all the evidence that the plaintiff at the time of the injury did not know that such stick was insufficient in strength for the1 purpose for which it was used.”
This is taken in substance from the Norman case; and with the application made by the supreme court of that rule-to- the Norman case, we have, of course, no right to find any fault: we are bound to take it as the law of the state. That' was a case in which a person was working in a chamber in a mine. They were mining for coal, and as they worked along, they were in the habit of shoring up the roof. The rooms, opened one into another, and there was a succession of them. The man who was injured was at work there a good while,, and had made no complaint to his superior that there was any difference in the shoring up or that there was any danger in .working there. He was, in fact, injured because of the' falling of the wall. While he was working, he had used due care. The supreme court said that the petition should further show that he had no knowledge of the insecure condition of the riof, because if he had such knowledge, and continued to work there without informing hie principal, the principal would not be liable. The court further said *384 that he might be using great care at work at that time, not to do anything that would cause the roof to fall, or to precipitate any accident, yet he would be failing in his duty, and such failure would prevent his recovery, if, knowing that it was in a dangerous condition,-be continued to work without notifying his principal. That rule, of course, might be given if it w^s shown that this stick had been used a great deal at that time; that this man had been accustomed to see it, and knew about it, and knew that it was being used; but in a case of this kind, where the man came in at this point, and took hold and began his work as this man did, we do not think that it is applicable, or that the court erred in refusing to give the jury the request. We think the court charged the jury as fully and as fairly as it ought at that time.
The sixth request was not given:
“If it had not been before that time customary, in the handling of stone such as that in question, for the foreman in- charge of the work to provide a stick for such use, and plaintiff knew, or by the exercise of ordinary care and diligence might have known that it was not customary for. the foreman to furnish such stick, then he cannot recover by reason of any failure of the foreman to furnish such stick at the time of this injury.”
We do not think, as the case stood at that time, that the court was required to submit this request to the jury. It had charged,in the use of sticks,very fully before,and it was as favorable to the defendant as could be. The seventh request reads:
“This stick not having been a car, locomotive, machinery, or attachment thereto, nor a piece of machinery of any kind requiring special knowledge or skill to understand or appreciate the danger from its use, the foreman will, not be presumed to have better means of judging of its sufficiency than the plaintiff, or any of plaintiff’s co-laborers, and plaintiff would not be entitled to a verdict against the de *385 fendant by reason of any insufficiency in the stick, unless it is shown by a fair preponderance of the evidence that the foreman had special means of knowledge as to its sufficiency. ’ ’
That charge is founded upon a case in 101 N. Y., which is a case where a lamplighter, or a person who was engaged, perhaps, in fixing electric lights, who was using a ladder which he had used before, and which had often been used, for the purpose of enabling him to ascend to the lights, by ■setting it up against the lamp post, and going up it and adjusting the light. On this particular occasion he started to go up, and the ladder slipped and fell to the ground, and he was injured. He had been up it a good many times that morning before, safely, and had been accustomed to its use. The court held on that state of facts, that in the matter of a ladder of which he knew the character and the use as well ¡as any foreman could have known, and the mannerin which it was used, and the danger from it, if there were any, there would be no liability on the part of the defendant in that ¡action; but in that case it will be seen the employe had full knowledge of the working of the ladder and its dangers. 'That court holds that the employer was fully bound to use ordinary care and prudence in furnishing means for the employe to work with. And we think in this case, the foreman was bound to use ordinary care in selecting the stick, and fo have ordinary knowledge, at least, of the strength of the wood. The employe was bound to obey the foreman, and be active and diligent in performing his work, .and is not ■supposed to stop and examine the means employed, though if he have actual knowledge, he is chargeable with ordinary ■care in going on with the work.
We think, under the facts of this case as they stand, that the court was not bound to give that charge, and that it was not error for him to refuse to give it. We think, on the whole, the case was fairly submitted to the jury, and on the facts of the case, that the jury was justified, under the rules *386 applicable to this kind of a case, in rendering the verdict.
Chas. Pratt, for Plaintiff in Error.
Scribner & Hurd, for Defendants in Error.
The judgment will be affirmed, but in this case as in the Knobloch case, reasonable cause for filing the petition in error will be certified.